IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

           *Plaintiff,*

    v.

RUDOLPH MCBRIDE,

           *Defendant.*

Criminal No. 2:19-cr-268 - 1

Hon. William S. Stickman IV

## <u>MEMORADUM ORDER OF COURT</u>

On August 28, 2019, a federal grand jury returned a six-count Indictment charging Defendant Rudolph McBride ("McBride") and his co-defendants, Jaron Davis, True Kinnon, and Wayne Edwards in a series of Hobbs Act robberies and related offenses. At Count One, he was charged with conspiracy to commit Hobbs Act robbery and at Count Two he was charged with a substantive count of Hobbs Act robbery. (ECF No. 3). The Government filed a request for detention on September 4, 2019. (ECF No. 19).

On September 25, 2019, a detention hearing was held before Chief Magistrate Judge Cynthia Reed Eddy. After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the hearing, Chief Magistrate Judge Eddy found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community such that pretrial detention of McBride was appropriate. (ECF No. 51).

Thereafter, on November 14, 2019, a grand jury returned a fifteen-count Superseding Indictment against McBride and his co-defendants, charging them with a total of nine separate Hobbs Act robberies and related offenses. (ECF No. 92). McBride is charged with conspiracy

1

to commit Hobbs Act robbery from October 2018 through February 2019, and two counts of substantive Hobbs Act robbery - committing and aiding/abetting the commission of a robbery of Swifty Tires on November 24, 2018, and committing and aiding/abetting the commission of a robbery of CoGo's convenience store on January 30, 2019. He is also charged with brandishing, and aiding/abetting the brandishing, of a firearm in furtherance of a crime of violence. (ECF No. 92).

McBride filed a Motion to Reconsider Order of Detention on December 8, 2020. (ECF No. 284). According to McBride, "circumstances have changed," and he should be released from detention. (ECF No. 284, ¶ 11). He noted that the Allegheny County District Attorney's Office withdrew all charges relating to the heroin found on the air conditioner outside of his bedroom window during the September 3, 2019 execution of the arrest warrant in connection with the initial Indictment. He believes this important because no evidence now exists that he participated in criminal activity while on probation or parole, that he violated his probation or parole, and that he was engaged in drug trafficking. (ECF No. 284, ¶¶ 12-14). He offers his mother, Veronica Young, as his third-party custodian and agrees to reside at her residence under electronic monitoring, GPS monitoring, home detention or home incarceration. (ECF No. 284, ¶¶ 19-21).

The Government filed a response in opposition arguing that there is no evidence that would undermine Chief Magistrate Judge Eddy's decision to detain McBride. In fact, additional circumstances, like charging McBride in the Superseding Indictment with additional counts of Hobbs Act robbery and brandishing a firearm in furtherance of a crime of violence, now establish that there is a rebuttable presumption in favor of detention pursuant to 18 U.S.C. § 3142(e)(3)(B). Not only does the Government argue that McBride has not rebutted the

presumption of detention, but it submits that it has established, by clear and convincing evidence, that there are no conditions of release that would assure the safety of the community. (ECF No. 297).

McBride filed a Reply arguing he "rebutted the presumption of detention due to the withdrawal of the drug charges and by proposing a new release plan." (ECF No. 304, p. 1). Interestingly, he states that he "is not proposing that Veronica Young be his third-party caretaker. Instead, he is proposing that the Court supervise him to ensure that he will appear at scheduling hearings and that the community is safe." (ECF No. 304, pp. 1-2). A number of community members signed a letter attached as Exhibit A stating they are "willing to assist [McBride] in his transition and offer support" and that they "believe that Rudolph McBride III has been rehabilitated and can be a positive and productive member in the community until it is time for him to return to court." (ECF No. 304-1). His older brother, who is gainfully employed and a combat veteran, but does not reside in Pittsburgh, has offered to provide McBride with "direction and guidance." (ECF No. 305). Furthermore, a manager at Salvatore's Pizza (612 Penn Avenue, Pittsburgh) has represented that the establishment is willing to hire McBride upon his release.

## I. STANDARD OF REVIEW

The Court exercises *de novo* review over the detention order entered by a magistrate judge. *United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985). The Bail Reform Act generally requires release of a defendant prior to trial unless a judicial officer determines, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In determining whether any conditions of release will be sufficient, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the

person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

A motion for reconsideration is granted only if one of three situations is shown: (1) an intervening change in controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou–Ann v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), *cert. denied*, 476 U.S. 1171 (1986)). Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened:

> ... before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

## II. ANALYSIS

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, Chief Magistrate Judge Eddy found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community.   (ECF No. 51).   Chief Magistrate Eddy's reasons for detention included the following:  weight of the evidence against the defendant is strong; subject to a lengthy period of incarceration if convicted; prior criminal history; participation in criminal

activity while on probation, parole, or supervision; history of violence or use of weapons; prior violations of probation, parole, or supervised released. (ECF No. 51). She provided the following extensive explanation of her decision:

> First, the defendant is charged with violations of 18 U.S.C. Section 1951, conspiracy to commit Hobbs Act robbery; and 18 U.S.C. Section 951, 18 U.S.C. Section 2, Hobbs Act robbery.
>
> That is conspired to take and obtaining property from the person or in the presence of employees and customers of numerous businesses in Allegheny County, that is, money against the will of employees and these customers and businesses by means of actual and threatened force, violence, and fear of immediate and future harm.
>
> As well as Count 2 of the indictment, on or about January 30th, Mr. McBride and Mr. Kinnon and Mr. Edwards did unlawfully obstruct, delay, and affect in commerce in aiding, abetting, and obstruction delaying commerce as a violation of 18 United States Code, Section 1951.
>
> They did take action to obtain property from persons in the presence of an employee of CoGo's Convenience Store located at 2800 Brownsville Road, that is money against the will of the employee at the Brownsville Road CoGo's by means of actual threatened force, violence, fear and immediate and future harm.
>
> So I find that the offense charged are crimes of violence that present a danger to the community.
>
> In addition, the offense charged by the state, I'm also considering it. I know that is a crime involving narcotics which would also be a threat to the safety of the persons of the community.
>
> I have also considered the weight of the evidence in this case. There is at least probable cause to believe that the defendant committed the offenses by virtue of the grand jury's finding of a true bill on the indictment.
>
> In addition, I listened to Detective Pioth's testimony today as relates to the circumstances of the charged offense and other factors that are pertinent to my decision.
>
> I have considered the history and characteristics of the defendant. I have considered that he has been a lifelong resident of the Western District of Pennsylvania residing mostly with his mother and received a high school diploma in 2017 and that he has been actively employed for some period of time, sometimes working two jobs, although we don't know specifically hours or the exact dates. His mother mentioned a couple of jobs that aren't in the Pretrial Services report. So I don't know if those were verified or not verified.
>
> I have considered the defendant's prior criminal history and while I agree with defense counsel that these are misdemeanors, I see there is a misdemeanor in November 2016, two misdemeanors in November 2016 – excuse me – summary offense, not misdemeanors to which one was moved to non-traffic court, one in which he pled guilty. Then in 2017, disorderly conduct moved to non-traffic and then disorderly conduct guilty plea.

The concerning thing about these disorderly conducts, they all occurred while living with his mother.

Then we have the arrest which took place in February of 2019 where he was charged with felony robbery, conspiracy felony robbery, theft by unlawful taking, possession of instrument of a crime, and he was released on unsecured bond with home detention and monitoring on April 3 to live in his mother's home.

When he was arrested on the federal charge, which was September 3rd, he was found or alleged to have been sneaking or attempting to hide possession of a brick of what appears to be heroin during that arrest.

I note that at that time he was already on house arrest and electronic monitoring for extremely serious offenses, yet he still continued to allegedly engage in this criminal conduct with that heroin.

In addition, the search of the home to which he wants to go where he lived with his mother, which occurred in February 201[9], recovered a .22-caliber rifle that was used in connection with one of the aforementioned crimes, as well as live .380 rounds which his mother didn't know about, and she didn't know about the heroin, and these were at the home.

And as to the finding of the air rifle or air gun, that can be used to put someone in fear of intimidation of harm.

I don't know what the intent was with that although his mother testified that she never even allowed toy guns in the house.

I've considered and reviewed the Pretrial Services Officer's recommendation that there is no condition or combination of conditions that can reasonably assure for the safety of the community.

I have also considered the letters from an employer and his mother's testimony.

Nevertheless, I find based on clear and convincing evidence, that no conditions would reasonably ensure the safety of others and I'm holding the defendant until his trial

(ECF No. 281, pp. 40-44).

The Court can reach its decision regarding the "new" evidence without a hearing. In regards to McBride's claim that his "new" evidence would alleviate Chief Magistrate Judge Eddy's concerns about him being a danger to the community, the Court holds it does not alleviate its own concerns. The Court accepts that state officials chose to withdraw charges against McBride in connection with his constructive possession of the brick of suspected heroin during the effectuation of an arrest warrant. What is more concerning to the Court is the testimony from the detention hearing regarding the February 1, 2019 shooting at the residence of

co-defendant Edwards involving an excess of twenty shots fired by two separate firearms. Furthermore, the new evidence presented by the government – i.e., that the count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), results in a rebuttable presumption in favor of detention pursuant to 18 U.S.C. § 3142(e)(3)(B)[1] - completely changes the framework of the Court's inquiry.   No rebuttable presumption existed at the time of the detention hearing before Chief Magistrate Judge Eddy, which occurred before the issuance of the Superseding Indictment.   The Court is in agreement with the Government that a rebuttable presumption now exists due to the charges McBride is facing in the Superseding Indictment.

To rebut this presumption, the burden was upon McBride to produce some credible evidence that he would not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).[2]   Rebuttal of the initial presumption shifts the burden to the Government to demonstrate by clear and convincing evidence that McBride is a danger to the community. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

The Court must, therefore, make the initial determination of whether McBride has proffered sufficient evidence to rebut the initial presumption against pretrial release.   McBride would reside with his mother, Veronica Young, upon his release.   This does not persuade the

---

[1] By virtue of the grand jury's return of a Superseding Indictment, probable cause exists that McBride committed these offenses. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).

[2] Even if McBride satisfies his initial burden of production to rebut the presumption against release, it does not completely eliminate the presumption favoring detention from further consideration; rather, it remains a factor to be considered among those weighed by the Court.

Court since McBride's criminal history and the instant crimes all occurred while he was residing with Ms. Young. Added to this, she was unaware of the presence of a .22 caliber rifle and .380 caliber ammunition in her residence. However, McBride has submitted a letter signed by a number of individuals who are willing to assist him if released and ensure that he remains "a positive productive member in the community until it is time for him to return to court." (ECF No. 304-1). Furthermore, his brother, who is an engineer, has offered to provide direction and guidance. (ECF No. 305). Additionally, he has employment at Salvatore's Pizza upon release.

Consequently, after consideration of the evidence and arguments of counsel, the Court concludes that McBride has rebutted the initial presumption that no condition or combination of conditions would reasonably ensure the safety of the community if he is released. Nevertheless, the Court's examination of the materials before it leads it to the conclusion that, even though McBride rebutted the presumption, the Government established by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community if McBride were to be released.

The factors to be considered under the Bail Reform Act overwhelmingly weigh in favor of detention. Cognizant of the fact that McBride retains his presumption of innocence, the Court must nonetheless examine the nature and circumstances of the offenses charged and the weight of the evidence. As to the nature and circumstances of the offenses charged, they are very serious and carry with them substantial penalties. (ECF No. 97, pp. 5-7). As to the weight of the evidence against McBride, it is strong. The Court has adjudicated a number of McBride's pretrial motions, and it is aware of some of the Government's evidence against McBride in addition to the evidence presented to Chief Magistrate Judge Eddy during the detention hearing.

Thus, as to the nature and circumstances of the offenses charged and the weight of the evidence, these factors favor pretrial detention.

The Court must next consider McBride's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" under § 3142(g)(3)(A). Much of McBride's history and characteristics remain the same since the detention hearing except that he did not participate in drug trafficking crimes while under court supervision. The Court is mindful of the fact that McBride has strong ties to Pittsburgh and the support of his mother, brother and various community members. McBride had an employment history after graduating from high school in 2017, and has obtained employment should he be released. No information has been presented about McBride's conduct in prison during his pretrial detention.

The fact remains that McBride was under court supervision when he committed the string of robberies at issue because he was arrested in February of 2019 and charged with felony robbery, conspiracy felony robbery, theft by unlawful taking, possession of instrument of a crime, and he was released on unsecured bond with home detention and monitoring on April 3 to live in his mother's home. He was then arrested on the instant federal charges later in the year. Also factoring into how McBride's history and characteristics weigh into his risk to the community, is McBride's quest to find co-defendant Edwards the day after allegedly committing one of the robberies. Two unidentified persons shot twenty rounds at the Edwards' residence with a .22 caliber firearm purchased by co-defendant Kinnon and a .380 caliber firearm. These firearms were used in a shooting several months earlier. During the search warrant of McBride's

residence (two weeks after the shooting of the Edwards' residence), the .22 rifle and .380 ammunition were recovered.

The fact that a relative, McBride's mother, is willing to serve as a third-party custodian is among the factors to be considered by the Court. The Court appreciates the help that Ms. Young is willing to provide and does not doubt her sincerity. However, this living arrangement would amount only to reinstating McBride to the *status quo ante*, the very situation which existed at the time of the underlying acts—a situation where McBride was living with his mother and managed to commit a string of robberies that occurred over months. The Court finds little reason to accept McBride's contention that his behavior going forward would be different. *See e.g. United States v. Boyd*, 29 F.Supp. 3d 658, 661-62 (E.D.N.C. 2014) (Mother's willingness to serve as a third-party custodian not sufficient to rebut presumption against release, doing so would merely return the defendant to the status quo).

After considering all of McBride's history and characteristics, the Court finds that this factor weighs strongly in favor of detention.

The last factor for consideration by the Court involves McBride's risk of non-appearance and the seriousness of potential harm to any persons or the community. 18 U.S.C. § 3142(g). Based on the Court's review of the parties' pleadings, there does not seem to be any dispute that McBride would appear for court dates. What is at issue is the nature and seriousness of danger posed by McBride. There is no doubt that the armed robbery of citizens in convenience stores and the unauthorized possession (and discharging) of firearms poses a substantial harm to the community. Ultimately, the Court must predict pretrial recidivism if McBride was released pending trial. The danger to the community is the likelihood that McBride will, if released, illegally obtain firearms and commit further violent offenses on the community. Strict

conditions of release, including home confinement and electronic monitoring, cannot guarantee that McBride will no longer engage in criminal activity. McBride's "new" evidence has failed to assuage the Court's concern about him imperiling the community. Consequently, the last factor weighs strongly in favor of detention.

### III.    CONCLUSION

The Court's probing examination of the record and the new evidence proffered by the parties leads it to conclude that the Government established by clear and convincing evidence that McBride is a danger to the community. Pretrial detention remains warranted.

AND NOW, this 6ᵗʰ day of January 2021, it is hereby ORDERED that the Motion to Reconsider Order of Detention (ECF No. 284) is DENIED.

BY THE COURT:

WILLIAM S. STICKMAN, IV
UNITED STATES DISTRICT JUDGE